# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>ENRIQUE MANZO,<br><br>    Defendant. | Case No. CR13-2019<br><br>ORDER FOR PRETRIAL DETENTION |

On the 26th day of August, 2013, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Justin Lightfoot. The Defendant appeared personally and was represented by his attorney, John Dennis Jacobsen.

## I. RELEVANT FACTS AND PROCEEDINGS

On August 15, 2013, Defendant Enrique Manzo was charged by Indictment (docket number 3) with conspiracy to possess and distribute pseudoephedrine as a precursor. At the arraignment on August 22, 2013, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on October 21, 2013.

At the hearing, Joshua Mulnix, a special agent with the Iowa Division of Narcotics Enforcement, testified regarding the circumstances underlying the instant charge. Mulnix testified that pseudoephedrine logs maintained by retailers showed that Defendant and his wife, co-defendant Jessica Manzo, purchased pseudoephedrine together over 20 times between June 2012 and April 2013. Wal-Mart video surveillance confirms that Defendant and Jessica Manzo purchased pseudoephedrine together, often within minutes of each

1

other. The video surveillance also shows that Defendant and Jessica Manzo purchased pseudoephedrine with others, including Judith Green (Jessica Manzo's sister) and Michael Tosh. In the video, the four took turns purchasing pseudoephedrine, and then met in the parking lot to give the pseudoephedrine to Defendant and Jessica Manzo.

On April 29, 2013, law enforcement executed a search warrant at Defendant's residence. Officers found several small baggies of methamphetamine. Officers also found drug paraphernalia containing methamphetamine residue, and empty pseudoephedrine blister packages.

On May 20, 2013, Defendant and Jessica Manzo were interviewed together by law enforcement. They admitted collecting pseudoephedrine to give to Chad Root for the purpose of manufacturing methamphetamine.[1] Root was also interviewed by law enforcement and stated that Defendant and Jessica Manzo supplied him with multiple boxes of pseudoephedrine. Additionally, Judith Green, who was seen purchasing pseudoephedrine with Defendant and Jessica Manzo on the Wal-Mart surveillance video, also told law enforcement that she purchased pseudoephedrine to give to Defendant and Jessica Manzo for the manufacture of methamphetamine.

According to the pretrial services report, Defendant is 36 years old. He was born in Chicago, Illinois, but has lived most of his life in Live Oak, Florida. He moved to Iowa about three years ago. He has lived in Oelwein, Iowa, for the past month, and if released would return to his residence in Oelwein.[2] Defendant's parents and one sibling reside in Live Oak. His other sibling lives in Colorado. Defendant and co-defendant, Jessica Green, got married in May 2013. Defendant was also married once before. He has no

---

[1] Chad Root has pleaded guilty in federal court to methamphetamine charges.

[2] Defendant also told the pretrial services officer that he could live with is friend Loren Strong in Elgin, Iowa.

2

children from either marriage, but has a nine-year-old daughter from a different relationship who lives in Florida with his parents.

Defendant has been employed doing security work at Echo Valley Speedway in West Union, Iowa, for the past year. If released, Defendant also plans to do harvesting work in northeast Iowa. Defendant is in good physical health. He reported no history of mental or emotional health concerns. Due to recent state charges of violating a no contact order, a state court judge ordered Defendant to participate in anger management and couples counseling.[3] Defendant told the pretrial services officer that for most of his adult life he has smoked marijuana once every six months. He stated his last use was one week prior to his arrest on the instant federal charge. Defendant also reported that he started using methamphetamine in the past year. He stated that in January 2013, he used methamphetamine on a daily basis, but since that time he has been trying to quit. His last use was approximately three weeks ago.

Defendant has an extensive criminal record. In January 1996, at age 19, Defendant was charged with possession of cocaine and possession of drug paraphernalia. Those charges were dismissed. On August 6, 1997, Defendant was charged and later convicted of strong-arm robbery, possession of cocaine, and possession of drug paraphernalia. In December 1997, while those charges were pending, Defendant was charged and later convicted with possession of cocaine and possession of drug paraphernalia. On January 28, 1998, Defendant was sentenced on the robbery and four drug charges with 364 days in jail.

On February 7, 1999, Defendant was charged with possession of narcotic implement. However, this charge was not prosecuted. On April 9, 1999, while the possession of narcotic implement charge was pending, Defendant was charged and later convicted of third degree grand theft. On November 12, 1999, Defendant was charged

---

[3] According to Defendant, his first session was scheduled for the day of his initial appearance in federal court.

3

with possession of cocaine and possession of cocaine with intent to deliver. Both cases were dismissed one month later.

On June 14, 2000, Defendant was charged and later convicted of burglary of an occupied dwelling, robbery, home invasion robbery, and third degree grand theft. While these charges were pending Defendant was convicted of loitering, grand theft, and domestic abuse assault in three separate cases. On September 25, 2001, Defendant was sentenced on the June 14, 2000 burglary and robbery charges to 3 years in prison. His sentence was discharged on September 28, 2003.

In March 2006, Defendant was charged with possession of drug paraphernalia. However, that charge was not prosecuted. In April 2006, while the paraphernalia charge was pending, Defendant was charged and later convicted of domestic battery. He was given 1 year probation.[4] In June 2006, while charges were pending, Defendant was charged with obstructing an officer without violence and carrying a concealed weapon. Adjudication in these charges was withheld. In October 2007, Defendant was charged and later convicted of disorderly conduct. In December 2008, Defendant was charged with battery, second offense. However, that charge was not prosecuted.

In June 2010, Defendant was charged with domestic violence assault, but prosecution was declined. In July 2010, Defendant was charged with second degree petit theft. Adjudication was withheld on that charge. In September 2010, Defendant was charged with driving under the influence, first offense, but that charge was ultimately dismissed. In January 2011, Defendant was charged and later convicted of disorderly conduct. He was given 3 months probation. In March 2011, while the disorderly conduct charge was pending, Defendant was charged with aggravated assault with a deadly weapon with out intent to kill (domestic violence). That charge was ultimately dismissed.

---

[4] In August 2006, a petition for violation of probation was filed against Defendant. A warrant was issued, and eventually served in June 2007. Defendant's probation was revoked and he was sentenced to 90 days in jail.

4

On July 20, 2012, in Dubuque County Iowa, Defendant was charged and later convicted of public intoxication and harassment of a city employee. On July 2, 2013, Defendant was charged with operating a vehicle without the owner's consent and domestic abuse assault causing bodily injury.[5] Arraignment is scheduled for August 28, 2013 in state court. While that charge was pending, on July 9, 2013, Defendant was charged with violation of a no contact order. Trial is scheduled for September 17, 2013 in state court. On July 27, 2013, while charges remained pending, Defendant was charged in separate cases with violation of a no contact order and possession of a controlled substance.[6] No hearing is currently scheduled in the second violation of no contact order charge, and a preliminary hearing is scheduled for August 28, 2013 in the possession charge in state court. On August 14, 2013, while charges remained pending, Defendant was charged a third time with violation of a no contact order. Defendant's initial appearance in that case is scheduled for August 27, 2013, in state court.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988).

---

[5] According to state court documents, Defendant punched his wife, co-defendant Jessica Manzo, in the face and broke her nose.

[6] When Defendant was being transported to the Fayette County jail on the violation of no contact order charge, officers found two baggies of methamphetamine in the backseat of the patrol car where Defendant had been sitting.

The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant;

(3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for which a maximum term of imprisonment of ten years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(A)(B) and (E). In a "presumption case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id. See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

### B. Analysis

Turning to the facts in the instant action, Defendant is charged with conspiracy to possess and distribute pseudoephedrine as a precursor. Accordingly, regarding the first

step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(C).

Regarding the second step, there is a rebuttable presumption in favor of detention. The weight of the evidence against Defendant is strong. Defendant admitted to law enforcement that he purchased pseudoephedrine to give to others to be used in the manufacture of methamphetamine. Defendant's admissions are confirmed by pseudoephedrine logs and Wal-Mart video surveillance. Additionally, there are witnesses who will testify that Defendant purchased pseudoephedrine to be used in the manufacture of methamphetamine.

As a general proposition, the manufacture of methamphetamine constitutes a general danger to the community. Defendant has a record of violent activity, including recently punching his wife in the face and breaking her nose. Furthermore, Defendant has a history of committing additional offenses while on pretrial release and probation. Defendant has allegedly violated a no contact order three times in the past seven weeks. Additionally, Defendant lacks stable employment and a stable residence. Based on the serious nature of the offense, all of the facts and circumstances, and the rebuttable presumption, the Court finds that there is no condition or combination of conditions that will reasonably assure the safety of the community or Defendant's appearance for court proceedings. Therefore, the Court finds that Defendant should be detained pending trial.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds the Government has met its burden of proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required. The Court further finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

## III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the Government's oral motion to detain (August 22, 2013) to the filing of this Ruling (August 26, 2013) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 26th day of August, 2013.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA